# Exhibit A

Unit # 2355 -- Greenville, Mississippi

## LEASE AGREEMENT

THIS LEASE AGREEMENT is made and entered into as of January 28 , 2006, by and between:

    (i)    **ALLEN ERNEST HOM**, as trustee of the Allen Ernest Hom Trust, u/t/d August 19, 1992, with its principal office and place of business at 1721 Lido Lane, Huntington Beach, California 92647 (the "Original Landlord"), and

    (ii)    **SHONEY'S, LLC**, a Tennessee limited liability company, with a mailing address of 1717 Elm Hill Pike, Suite B-1, Nashville, Tennessee 37210, Attn: Real Estate (the "Original Tenant").

## W I T N E S S E T H:

Landlord (as hereafter defined) leases to Tenant (as hereafter defined), for the purpose of operating a Shoney's Restaurant and for no other use or purpose whatsoever (except as may be permitted in this Lease (as hereafter defined)) and subject to the terms and conditions of the Rent Addendum attached hereto, and Tenant rents from Landlord the following (the "Premises"): the real property located at 2771 Highway 82 East, Greenville, Mississippi, and being more particularly described in Exhibit "A" attached hereto and made a part hereof (the "Land"), together with (i) all rights, privileges, easements, servitudes, rights-of-way and appurtenances belonging or appurtenant to the Land (the "Appurtenant Interests"), and (ii) all buildings, fixtures and other improvements now or hereafter located on the Land and all right, title and interest of Landlord in and to any improvements used in connection with or necessary for the exercise of the Appurtenant Interests.

The following additional stipulations are hereby declared to be covenants of this Lease and shall, unless otherwise expressly stated, be applicable at all times throughout the term of this Lease and any extension or renewal thereof:

## 1.    DEFINITIONS

In addition to the defined terms appearing elsewhere in this Lease, for purposes of this Lease, the following terms shall have the definitions ascribed to them as follows:

"Alteration Amount" shall mean an amount equal to Seventy Five Thousand and No/100 Dollars ($75,000.00), provided, however, commencing at the end of the fifth (5th) Lease Year (as hereafter defined), and on each fifth (5th) anniversary of such date thereafter during the term of this Lease (and any extension or renewal thereof), such amount shall be increased by an amount equal to ten percent (10%) of the Alteration Amount in effect for the immediately preceding Lease Year.

"Annual Rent Commencement Date" shall be January ____, 2006.

"Effective Date" shall mean the date set forth at the beginning of this Lease Agreement.

"Landlord" shall mean Original Landlord and its successors and assigns.

"Lease" shall mean this Lease Agreement and all amendments hereto, if any, entered into from time to time hereafter, together with the Rent Addendum and exhibits attached hereto.

"Lease Year" shall mean a fiscal period beginning on the Annual Rent Commencement Date (and each anniversary thereof) and expiring on the last day preceding the next annual anniversary of the Annual Rent Commencement Date. In the event the Annual Rent Commencement Date is not the first (1st) day of a calendar month, then the first Lease Year shall commence on the first (1st) day of the calendar month following the Annual Rent Commencement Date and each subsequent Lease Year shall commence on the annual anniversary of the commencement date of the first Lease Year.

"Material Taking" shall mean a Taking of the whole of the Land or a Taking of any portion of the Premises that will: (i) result in the loss of any material portion of the building located on the Land; (ii) materially impair access to the Land in Tenant's reasonable judgment; (iii) result in the loss of any drive-thru customer service facility on the Land; or (iv) otherwise result in the permanent closure or removal of a portion of the improvements (including the loss of parking spaces) located on the Premises so as to render uneconomical the continued use of the Land (or the remainder thereof) for Tenant's restaurant operations.

"Rent" shall mean the rent payable under this Lease as set forth in the Rent Addendum attached hereto and incorporated herein, and shall include Annual Rent (as defined in the Rent Addendum), together with all other items described in this Lease as "additional rent".

"Taking" shall mean a taking of all or any part of the Premises for any public or quasi-public use under any governmental law, ordinance, regulation or right of eminent domain, or sale to the condemning authority under threat of condemnation or by agreement between Landlord and/or Tenant and those authorized to exercise such right under threat of condemnation.

"Tenant" shall mean Original Tenant and its successors and any assignee thereof pursuant to an assignment under Paragraph 15 hereof.

2.    **TERM AND RENT**

(a)    <u>Term</u>.  The term of this Lease shall begin on the Effective Date and shall expire on January ____, 2026 (the "Termination Date"), unless previously terminated or renewed or extended as provided herein.

(b)    <u>Rent</u>.  Rent shall be due and payable as provided in the Rent Addendum attached hereto and incorporated herein.

3. **ALTERATIONS AND IMPROVEMENTS, INVESTMENT TAX CREDIT, MECHANIC'S LIENS, LANDLORD'S DISCLAIMER**

(a) Alterations and Improvements.

(i) Tenant's Property. Tenant shall be permitted to install, use on and about, and remove from the Premises at any time and from time to time all trade fixtures and other personal property (exclusive of lighting, electrical, and heating and air conditioning improvements) which are not a component of the building located or to be located on the Land (collectively, the "Tenant's Property"), all of which at all times shall remain the property of Tenant with the right of removal (subject to Paragraph 3(d) below) at the expiration or termination of this Lease. Tenant's Property shall include: (1) removable decor items and office equipment; (2) building lettering, signs, sign posts and sign standards; (3) unattached food and customer service equipment; and (4) food and customer service equipment attached to the building by bolts and screws and/or by utility connections, including, without limitation, walk-in refrigerators and freezers, remote refrigeration systems, exhaust systems and hoods and water heaters.

(ii) Subsequent Improvements. Tenant shall also have the right to make any additions, alterations, changes and improvements, structural and nonstructural, including, without limitation, construction of additional buildings and additions to the then existing buildings, as Tenant shall desire; provided, however, (v) Tenant shall submit plans of all material changes to Landlord at least thirty (30) days in advance of the proposed construction date, which plans shall be subject to Landlord's reasonable approval which shall be given (or denied) within two (2) weeks of receipt of such plans, (w) Tenant shall provide Landlord with evidence of Tenant's financial ability to pay for such changes, (x) if the cost of changes (as reasonably set forth in such plans) exceeds the Alteration Amount, Tenant shall deliver to Landlord unconditional payment and performance bonds for such work naming Landlord and Tenant as dual obligees, (y) all such construction shall be completed in a good and workmanlike manner and in material compliance with all laws, building codes and ordinances applicable thereto, at Tenant's sole expense, and (z) such additions, alterations, changes and improvements (whether structural or non-structural) shall not reduce the fair market value of the Premises, as reasonably determined by Landlord. In the event Landlord has not granted or denied its approval of plans submitted in accordance with this Paragraph 3 within such two (2) week period, such plans shall be deemed approved by Landlord. For purposes of Paragraph 3(a)(ii)(v) hereof "material changes" shall mean: (I) any proposed structural changes to the improvements on the Land, (II) any proposed change in the "foot print" of the improvements on the Land, (III) any change of interior floor-to-ceiling partitions on the Land or (IV) any changes the cost of which exceed the Alteration Amount.

(iii) Improvements Upon Termination, Subletting or Assignment. Subject to the requirements of this Paragraph 3, Tenant shall have the right, at its option and expense, to redecorate or otherwise remodel the improvements on the Premises upon any termination hereof or upon any permitted subletting or assignment in such manner as will, without reducing the fair market value thereof, avoid the appearance of the Shoney's Restaurant operated under this Lease; provided, however, in addition to the other

requirements of this Paragraph 3, Tenant shall not impair the structural condition of the improvements on the Premises or reduce the size of the building on the Land.

(iv)    All subsequent improvements referred to in Paragraph 3(a)(ii) above, all improvements upon termination, subletting or assignment referred to in Paragraph 3(a)(iii) above, and any and all other additions, alterations, changes and improvements of any type by Tenant to the Premises shall be deemed to be a part of the Premises and the sole property of Landlord.

(b)    Investment Tax Credit.  Landlord hereby grants Tenant the right and privilege of applying for and receiving all investment tax credits, if any, under the Internal Revenue Code of 1986, as amended (the Code") which may be available with respect to the building and other improvements that may be constructed on the Premises.  To this end, Landlord agrees to execute all such further documents and supply such additional information as may be required to make such election effective.

(c)    Mechanic's and Other Liens.  Tenant shall not do anything by which the Premises, or any part thereof, shall be encumbered by a mechanic's, materialman's, or other lien for work or labor done, services performed, materials, appliances, or power contributed, used, or furnished in or to the Premises or in connection with any operations or any other activity of Tenant, and, if, whenever and as often as any lien may be filed against the Premises, or any part thereof, purporting to be for or on account of any labor done, materials or services furnished in connection with any work in or about the Premises by, for or under the authority of Tenant, or anyone claiming by, through or under Tenant, Tenant shall discharge the same of record within ten (10) days after service upon Tenant of notice of the filing thereof; provided, however, Tenant shall have the right to remove the lien as an encumbrance upon the Premises by bonding the same in accordance with applicable law and to contest any such lien; provided, further, that Tenant shall diligently prosecute any such contest, at all times effectively staying or preventing any official or judicial sale of the Premises under execution or otherwise, and, if unsuccessful, satisfy any final judgment against Tenant adjudging or enforcing such lien or, if successful, procuring record satisfaction or release thereof.  Landlord shall, at the request of Tenant, execute or join in the execution of any instruments or documents necessary in connection with such proceedings, but Landlord shall incur no cost or obligation thereby.

(d)    Landlord's Disclaimer.  All of Tenant's Property placed in or upon the Premises by Tenant shall remain the property of Tenant with the right to remove the same at any time during the term of this Lease or any extension or renewal thereof.  Landlord, if requested by Tenant, agrees to execute a Subordination of Landlord's Lien in commercially reasonable form by which Landlord subordinates its lien rights to the lien rights of any equipment lender or lessor with respect to Tenant's Property, and to all rights of levy for distraint for rent against the same; provided, however, any damage caused by, or resulting from, the removal of any of Tenant's Property or other personal property (including the leaving of holes or other openings in the roof or exterior of the building on the Land) shall be promptly repaired by Tenant or the party removing the same.  Landlord agrees that such equipment lender or lessor shall have a period not to exceed thirty (30) days to remove such equipment (and Landlord may thereafter remove such equipment at such lessor's or lender's expense).  Landlord shall be entitled to reimbursement by Tenant for its reasonable costs and expenses in connection with execution of such

documentation, and Tenant agrees to pay such reasonable costs and expenses as a condition precedent to Landlord's execution of such documents.

## 4. DESTRUCTION OF PREMISES; INSURANCE

(a)     If the improvements on the Land are damaged or destroyed by fire, flood, tornado or other element, or by any other casualty and such damage or destruction does not result in a Total Loss (as hereafter defined), this Lease shall continue in full force and effect and Tenant shall, as promptly as possible, restore, repair or rebuild the improvements on the Land to substantially the same condition as existed before the damage or destruction, including any improvements or alterations required to be made by any governmental body, county or city agency due to any changes in code or building regulations. Tenant shall for this purpose use all, or such part as may be necessary, of the insurance proceeds received from insurance policies required to be carried under the provisions of Paragraph 4(b) below. If such insurance proceeds are not sufficient to pay such costs, Tenant shall pay such deficit. Should the improvements on the Land be damaged or destroyed by any of the foregoing described casualties within the last twenty-four (24) months of the original term or of any extended or renewed term of this Lease, then to the extent that the Premises are untenantable or unsuitable, in Tenant's reasonable opinion, for continued use in the normal conduct of Tenant's business including, without limitation, if restoration or reconstruction either (A) is not permitted by then existing laws or governmental regulations applicable to the restoration or reconstruction of the improvements on the Land or (B) is not economically practicable, in the reasonable judgment of Tenant, as a result of the cost of compliance with then existing laws or governmental regulations applicable to the restoration or reconstruction of the improvements on the Land (a "Total Loss"), Tenant shall have the right, exercisable by written notice to Landlord given within sixty (60) days after the date of such damage or destruction, to terminate this Lease effective upon the date of such damage or destruction. If Tenant terminates this Lease as thus provided, Landlord shall be entitled to all of the insurance proceeds paid with respect to the Premises, but not to the proceeds of insurance carried by Tenant on Tenant's Property; provided, however, Tenant shall not have the right to terminate this Lease unless (i) the damage or destruction of the improvements on the Land was caused by a peril which was insured against as required by the provisions of Paragraph 4(b) below; and (ii) at the time of such damage and destruction the said insurance policies required to be carried by Tenant were in the amounts required by Paragraph 4(b) below and in full force and effect; and (iii) the insurer has confirmed coverage and its obligation to pay. If Tenant defaults in its obligation to carry insurance in the amounts required under Paragraph 4(b) below, then, prior to Tenant's termination of this Lease and in addition to the requirements set forth in the preceding sentence, Tenant shall be obligated to pay toward said reconstruction or to Landlord the difference between the amount of insurance actually carried and the amounts required to be carried under this Paragraph 4.

(b)     Tenant, at its expense and as additional rent hereunder, shall throughout the term of this Lease and any extension or renewal thereof, keep the improvements on the Land insured with (i) "Special Form Causes of Loss" coverage (as such term is used in the insurance industry), at least as broad as the most current ISO Special Cause of Loss Form, including coverage for glass breakage, vandalism and malicious mischief, and builder's risk (if the improvements on the Land are to be constructed (or substantially refurbished or rebuilt) pursuant to the terms of this Lease) for one hundred percent (100%) of the insurable replacement value with no co-insurance

penalty, with any deductible in excess of Two Hundred Fifty Thousand and No/100 Dollars ($250,000.00) to be approved by Landlord, and (ii) "Ordinance and Law Coverage" with limits of not less than the building value for Coverage A (loss to the undamaged portion of the building), limits of not less than fifteen percent (15%) of the building value for Coverage B (Demolition Cost Coverage), and limits of not less than fifteen percent (15%) of the building value for Coverage C (Increased Cost of Construction Coverage).

(c)     Tenant shall maintain throughout the term of this Lease and any extension or renewal thereof, at its own expense and as additional rent, commercial general liability insurance including product liability and liquor liability (if alcohol is served by Tenant) covering the Premises at least as broad as the most commonly available ISO Commercial General Liability policy form (occurrence basis) covering bodily injury, property damage and personal and advertising injury, for the joint benefit of and insuring Tenant and Landlord, with limits of not less than One Million Dollars ($1,000,000.00) per occurrence, with a general aggregate of not less than Two Million Dollars ($2,000,000.00) and a "following form" umbrella liability policy or excess liability policy to include product liability and liquor liability (if alcohol is served by Tenant), in an amount of not less than Three Million Dollars ($3,000,000.00) per occurrence, with any deductible or self-insured retention in excess of Two Hundred Fifty Thousand Dollars ($250,000.00) to be approved by Landlord.

(d)     Tenant shall maintain throughout the term of this Lease and any extension or renewal thereof, at its own expense, business interruption insurance covering risk of loss due to the occurrence of any of the hazards insured against under Tenant's "all risk" coverage insurance and providing coverage in an amount sufficient to permit the payment of Rent, taxes, insurance and operating expenses payable hereunder for a period (in such case) of not less than twelve (12) months.

(e)     In the event the Land is located in an area identified by the National Flood Insurance Program as an area having "special flood hazards" (zones beginning with "A" or "V"), Tenant shall maintain, throughout the term of this Lease and any extension or renewal thereof, flood insurance for the full replacement value of the improvements on the Land, with any deductible in excess of Two Hundred Fifty Thousand Dollars ($250,000.00) to be approved by Landlord.

(f)     In the event the Land is located in a major earthquake damage area and earthquake insurance is available, Tenant shall maintain, throughout the term of this Lease and any extension or renewal thereof, earthquake insurance for the full replacement value of the improvements on the Land, with any deductible in excess of Two Hundred Fifty Thousand Dollars ($250,000.00) to be approved by Landlord.

(g)     Tenant shall maintain such other insurance on or in connection with the Premises as reasonably required from time to time by Landlord, which is then commonly obtained by property owners (or net lease tenants) in connection with properties similar to and in the same area as the Premises and which is commercially reasonable to obtain.

(h)     All insurance companies providing the coverage required under this Paragraph 4 shall be selected by Tenant, shall be rated A minus (A-) or better by Best's Insurance Rating

Service (or equivalent rating service if not available) and shall be licensed to write insurance policies in the state in which the Land is located. Tenant shall provide Landlord with copies of all policies or certificates of such coverage for the insurance coverages referenced in this Paragraph 4, and all commercial general liability and umbrella liability or excess liability policies shall name Landlord (and if Landlord is either a general or limited partnership, its general partners) and any mortgagee designated by Landlord by written notice from Landlord to Tenant sent in accordance with the requirements of this Lease, as additional insured(s) thereunder. Any such coverage for additional insureds shall be primary and non-contributory with any insurance carried by Landlord or any other additional insured thereunder. All property insurance policies shall name Landlord as a loss payee as Landlord's interests may appear, and shall provide that all losses shall be payable as herein provided. All such policies of insurance shall provide that the amount thereof shall not be reduced and that none of the provisions, agreements or covenants contained therein shall be modified or canceled by the insuring company or companies without thirty (30) days prior written notice being given to Landlord; and that all insurance proceeds shall be paid by check payable to Landlord to be held in trust and disbursed to Tenant in accordance with a reasonable customary draw process or otherwise applied pursuant to the terms of this Lease. Such policy or policies of insurance may also cover loss or damage to Tenant's Property, and the insurance proceeds applicable to Tenant's Property shall not be paid to Landlord or any mortgagee but shall accrue and be payable solely to Tenant. In the event of a casualty, Tenant shall be responsible for any deficiency between the replacement cost of the improvements on the Land and the amount actually paid by the insurance company.

5.    **MAINTENANCE AND REPAIR**

(a)    Tenant shall, during the term of this Lease and any extension or renewal thereof, (i) maintain the Land and all buildings and improvements on the Land (interior and exterior, structural and otherwise) in good order and repair, subject to normal wear and tear (and subject to provisions hereof relating to condemnation and casualty) and perform all its obligations to maintain Appurtenant Interests as are imposed on Landlord or Tenant by the instruments granting such Appurtenant Interests; (ii) not commit waste or impair the Premises, subject to normal wear and tear (and subject to provisions hereof relating to condemnation and casualty); (iii) not abandon the Premises (provided that a temporary cessation of operations as described in Paragraph 12(a)(iii) hereof shall not be deemed to be an abandonment of the Premises); (iv) keep the Tenant's Property, including trade fixtures, equipment, machinery and appliances thereon in working condition and shall in accordance with Tenant's normal restaurant operations replace such Tenant's Property when necessary to keep such items in working condition; (v) comply in all material respects with all laws, ordinances, regulations and requirements of any governmental body applicable to the Premises; (vi) provide prompt notification to Landlord of any material adverse changes to the Premises, such as material changes in any environmental condition, including the presence of biocontaminants, such as, without limitation, mold, and shall promptly undertake reasonable remediation (and preventative) actions in connection with any such environmental condition originating on the Land and the improvements thereon or originating on the Premises and Tenant is the responsible party therefor; and (vii) subject to the provisions of Paragraph 4(a) and Paragraph 6 hereof, return the Land and all buildings and improvements thereon at the expiration of the term of this Lease or any extension or renewal thereof in as reasonably as good condition as when received, subject to normal wear and tear and return the

Appurtenant Interests and shall have performed all of its obligations with respect to maintaining such Appurtenant Interests.

(b)     Tenant agrees that Landlord shall have no obligation under this Lease to make any repairs or replacements (including the replacement of obsolete components) to the Premises or the buildings or improvements thereon, or any alteration, addition, change, substitution or improvement thereof or thereto, whether structural or otherwise. The terms "repair" and "replacement" include, without limitation, the replacement of any portions of the Premises which have outlived their useful life, as determined by Tenant in its reasonable discretion, during the term of this Lease (or any extension or renewal thereof). Landlord and Tenant intend that the Rent received by Landlord shall be free and clear of any expense to Landlord for the construction, care, maintenance (including common area maintenance charges and charges accruing under easements or other agreements relating to the Premises), operation, repair, replacement, alteration, addition, change, substitution and improvement of or to the Premises. Upon the expiration or earlier termination of this Lease, Tenant shall remain responsible for, and shall pay to Landlord, any cost, charge or expense for which Tenant is otherwise responsible for hereunder attributable to any period (prorated on a daily basis) prior to the expiration or earlier termination of this Lease.

(c)     Tenant acknowledges and agrees that the Premises are and shall be leased by Landlord to Tenant in their present "AS IS" condition, and that Landlord makes absolutely no representations or warranties whatsoever with respect to the Premises or the condition thereof. Tenant acknowledges that Landlord has not investigated and does not warrant or represent to Tenant that the Premises are fit for the purposes intended by Tenant or for any other purpose or purposes whatsoever, and Tenant acknowledges that the Premises are to be leased to Tenant in their existing condition, i.e., "AS IS", on and as of the Effective Date.

6.     **CONDEMNATION**

(a)     In the event that a Material Taking shall occur during the term of this Lease or any extension or renewal thereof, then in such event, Tenant shall have the option of terminating this Lease as of a date no earlier than the date of such Material Taking, such termination date to be specified in a notice of termination to be given by Tenant to Landlord not fewer than fourteen (14) days prior to the date on which possession of the Premises, or part thereof, must be surrendered to the condemning authority or its designee.

(b)     In the event of any Taking which does not constitute a Material Taking or in the event Tenant does not elect to terminate this Lease upon the occurrence of a Material Taking, Landlord shall make its award available to Tenant in accordance with a reasonable customary draw process and Tenant shall, to the extent of the award from such Taking (which term "award" shall mean the net proceeds after deducting expenses of any settlement, or net purchase price under a sale in lieu of a Taking), promptly restore or repair the Premises (except those items of Tenant's Property which Tenant is permitted to remove under the terms of this Lease) to substantially the same condition as existed immediately prior to such Taking insofar as is reasonably possible. If the estimated cost of restoration or repair shall exceed the amount of Landlord's award, Tenant shall deposit with Landlord the amount of such excess. The award and any excess shall be held in trust by Landlord and used, to the extent required, for the purpose

of such restoration or repair. A just and proportionate part of the Rent payable hereunder shall be abated from the date of such Taking until ten (10) days after Tenant has restored the same and thereafter the Rent shall be reduced in proportion to the reduction in the then rental value of the Premises after the Taking in comparison with the rental value prior to the Taking. Landlord and Tenant shall make a good faith determination of the rental value of the Premises after any such Taking based upon all relevant factors, including, without limitation, the economic impact of the Taking upon the business of Tenant conducted at the Premises. If the award shall exceed the amount spent or to be spent promptly to effect such restoration, repair or replacement, such excess shall unconditionally belong to Landlord and shall be paid to Landlord.

(c)  In the event of any Taking where this Lease is not terminated, Tenant shall not be entitled (except for use in reconstruction, as set forth herein) to any part of the compensation or award given Landlord for the Taking, but Tenant shall have the right to recover from the condemning authority such compensation as is specifically awarded to Tenant (i) to reimburse Tenant for any cost which Tenant may incur in removing Tenant's Property from the Premises and (ii) for loss of Tenant's business.

(d)  If this Lease is terminated by reason of a Material Taking, then Landlord shall be entitled to receive the entire award in any such condemnation or eminent domain proceedings or purchase in lieu thereof and Tenant hereby assigns to Landlord all of its right, title and interest in and to all and any part of such award, provided, however, Tenant shall be entitled to receive any award specifically made to reimburse Tenant.

## 7.    TAXES AND ASSESSMENTS, NOTICES

(a)  Except as set forth herein, Tenant shall pay prior to delinquency all taxes and assessments which may be levied upon or assessed against the Land and the improvements thereon (and the Appurtenant Interests to the extent levied upon or assessed against Tenant as the direct or indirect beneficiary of such Appurtenant Interests) and all taxes and assessments of every kind and nature whatsoever arising in any way from the use, occupancy or possession of the Land and the improvements thereon (and the Appurtenant Interests to the extent levied upon or assessed against Tenant as the direct or indirect beneficiary of such Appurtenant Interests), including, without limitation, gross receipts and excise taxes, together with all taxes levied upon or assessed against Tenant's Property. To that end, Landlord shall not be required, except as set forth herein, to pay any taxes or assessments whatsoever which relate to or may be assessed against this Lease, the Rent and other amounts due hereunder, the Premises or Tenant's Property; provided, however, any taxes or assessments which may be levied or assessed against the Land and the improvements thereon (and the Appurtenant Interests to the extent levied upon or assessed against Tenant as the direct or indirect beneficiary of such Appurtenant Interests) for a period ending after the termination hereof shall be prorated between Landlord and Tenant as of such date. Landlord agrees to provide to Tenant, within ten (10) business days after its receipt thereof, any tax bills and other legal or governmental notices relating to the Premises that Landlord receives. Notwithstanding any terms of this Lease to the contrary, nothing contained in this Paragraph 7 or elsewhere in this Lease shall obligate Tenant to pay (i) any income, profit, franchise or similar tax that may be imposed upon or assessed against Landlord with respect to the Rent and income derived from this Lease, under any law now in force or hereafter enacted, or (ii) to pay any inheritance, estate, succession, gift or any form of property transfer tax which may

be assessed or levied against Landlord (excluding any real estate assessments based on value after a transfer to a third party).

(b)     Within thirty (30) days after Tenant receives any paid receipted tax bills relating to the Premises, Tenant shall furnish Landlord with copies thereof. Tenant may, at its option, contest in good faith and by appropriate and timely legal proceedings any tax or assessment relating to the Premises; provided, however, Tenant shall indemnify and hold Landlord harmless from any loss or damage resulting from any such contest, and all expenses of the same (including, without limitation, all reasonable attorneys' fees and court and other costs) shall be paid solely by Tenant. Landlord shall, at the request of Tenant, execute or join in the execution of any instruments or documents necessary in connection with such contest or proceedings, but Landlord shall incur no cost or obligation thereby.

## 8.   COMPLIANCE, UTILITIES, SURRENDER

(a)     Tenant, at its expense:  shall promptly comply with all material municipal, county, state, federal and other governmental requirements and regulations, whether or not compliance therewith shall require structural or other changes in the Land and the improvements thereon (and the Appurtenant Interests to the extent properly imposed upon Tenant as the direct or indirect beneficiary of such Appurtenant Interests), whether now in effect or enacted during the term of this Lease or any extension or renewal thereof; will procure and maintain all permits, licenses and other authorizations required for the use of the Premises or any part thereof then being made by Tenant and for the lawful and proper installation, operation and maintenance by Tenant of all equipment and appliances necessary or appropriate for the operation and maintenance of the Land and the improvements thereon (and the Appurtenant Interests to the extent properly imposed upon Tenant as the direct or indirect beneficiary of such Appurtenant Interests); and shall comply with all easements, restrictions, reservations and other instruments of record applicable to the Premises, including, without limitation, any requirement in such instruments on behalf of the owner or occupant of the Land and the improvements thereon (and the direct or indirect beneficiary of the Appurtenant Interests) to procure and maintain insurance. Tenant shall indemnify and hold Landlord harmless from all expenses and damages by reason of any notices, orders, violations or penalties filed against or imposed upon the Premises, or against Landlord as owner thereof, because of Tenant's failure to comply with this Paragraph 8(a).

(b)     Tenant shall pay all charges for heat, water, gas, sewage, electricity and other utilities used or consumed on the Land and the improvements thereon (and the Appurtenant Interests to the extent properly imposed upon Tenant as the direct or indirect beneficiary of such Appurtenant Interests). Landlord shall not be liable for any interruption or failure in the supply of any such utility service to the Premises, except to the extent such interruption or failure results from the willful misconduct or gross negligence of Landlord or its agents, employees, or contractors.

(c)     Tenant shall peacefully surrender possession of the Premises to Landlord at the expiration, or earlier termination, of the original term of this Lease or any extension or renewal thereof.

9.     **QUIET ENJOYMENT**

Landlord covenants and warrants that Landlord has full power and authority to enter into this Lease, and that Tenant shall have and enjoy full, quiet and peaceful possession of the Premises, its appurtenances and all rights and privileges incidental thereto during the term hereof and any extension or renewal thereof, subject to the provisions of this Lease and any easements, restrictions, reservations and other instruments of record applicable to the Premises and recorded prior to the Effective Date and thereafter, provided Tenant has consented in writing to any instrument recorded subsequent to the Effective Date, which consent shall not be unreasonably withheld. Upon Tenant's request, Landlord agrees to cause the holder of any mortgage now or hereafter relating to the Premises to execute and deliver to Tenant a Subordination and Nondisturbance Agreement in the form contemplated by Paragraph 16 hereof.

10.     **OPTION TO RENEW**

Tenant shall have two (2) successive ten (10) year options to extend the original term of this Lease for up to an additional twenty (20) years upon the same terms, covenants, conditions and rental as set forth herein and in the Rent Addendum; provided that Tenant is not in Default (as hereafter defined) hereunder at the commencement of the applicable option period. In the event Tenant elects not to exercise the option to extend the term hereof for the next succeeding term (10) year option period, Tenant shall give written notice to Landlord not less than six (6) months prior to the then-existing expiration date of the term hereof. Should Tenant fail to give Landlord such timely written notice during the required period, this Lease shall automatically renew for the next succeeding ten (10) year option period pursuant to the terms hereof.

11.     **NONCOMPETE**

Tenant shall not own an interest in, or operate, another Shoney's Restaurant within a one (1) mile radius of the Land during the term of this Lease and any extension or renewal thereof (excluding other Shoney's Restaurants existing as of the Effective Date and any future food court, stadium, drive-in or end-cap units within such radius). Violation of this covenant shall, at Landlord's option, be and constitute a Default hereunder and, because the parties agree that damages would not be an adequate remedy, Tenant hereby agrees that Landlord shall be entitled to equitable relief, including injunctive relief and specific performance in addition to any remedy available at law. Tenant further agrees that the restrictions and the duration of such restrictions set forth in this Paragraph 11 are reasonable under the circumstances and in particular, in relation to Tenant's restaurant business.

12.     **DEFAULT**

(a)     If any one or more of the following events occur, said event or events are herein referred to as a "Default":

(i)     If Tenant fails to pay Rent or any other charges required under this Lease when the same shall become due and payable, and such failure continues for ten (10) days or more after written notice from Landlord (a "Monetary Default"). In the event of any such default, Landlord shall be entitled to the Default Interest Rate (as hereafter

defined) during the term of any such default, and any of Tenant's monies deposited with Landlord shall be immediately and irrevocably assigned to Landlord to apply to any obligations of Tenant owed to Landlord in any manner Landlord deems necessary.

(ii)     If Tenant shall fail to perform or observe any term, condition, covenant, agreement, or obligation required under this Lease other than a Monetary Default and such failure continues for thirty (30) days after written notice from Landlord (except that such thirty (30) day period shall be automatically extended for such additional period of time as is reasonably necessary to cure such default, if such default cannot be cured within such period, provided Tenant is in the process of diligently curing the same).

(iii)     If Tenant fails to continuously operate its business upon the Land (except for temporary periods of closure caused by casualty, repairs, Acts of God, or temporary and reasonable periods of remodeling), for a period greater than one hundred eighty (180) days in any Lease Year without first obtaining Landlord's written approval.

(iv)     If Tenant shall make an assignment for the benefit of creditors or file a petition, in any federal or state court, for bankruptcy or reorganization, or make an application in any such proceedings for the appointment of a trustee or receiver for all or any portion of its property.

(v)     If any petition shall be filed under federal or state law against Tenant in any bankruptcy, reorganization, or insolvency proceedings, and said proceedings shall not be dismissed or vacated within sixty (60) days after such petition is filed.

(vi)     If a receiver or trustee shall be appointed under federal or state law for Tenant, or any guarantor of Tenant's obligations hereunder, for all or any portion of the property of either of them, and such receivership or trusteeship shall not be set aside within sixty (60) days after such appointment.

(b)     Upon the happening of any one or more of the aforementioned Defaults which are not cured within the cure period applicable thereto, if any, Landlord shall have the right, in addition to any other rights and remedies, to terminate this Lease by giving written notice of the same to Tenant. Upon such notice, this Lease shall cease and expire, and Tenant shall surrender the Premises to Landlord. In addition, in the event of a termination of this Lease by Landlord, Landlord may, by notice to Tenant, accelerate the monthly installments of Rent due hereunder for the then remaining term of this Lease discounted by ten and one/half percent (10.5%), in which event such amount, together with any sums then in arrears, shall immediately be due and payable to Landlord. Tenant hereby expressly agrees that its occupation of the Premises after Default constitutes forcible detainer (or equivalent) as is defined by the law in force in the jurisdiction in which the Land is located. Tenant further agrees that in the event of a Default, any monies deposited by Tenant with Landlord shall be immediately and irrevocably assigned and released to Landlord (without further action by Landlord or Tenant) to be applied by Landlord against any and all of Tenant's obligations under this Lease, in any manner as Landlord may determine.

(c) Upon the happening of any one or more of the aforementioned Defaults which are not cured within the cure period applicable thereto, if any, Landlord shall have the right, in addition to any other rights and remedies, to terminate Tenant's right to possession of the Premises, re-enter the Premises and remove Tenant, its agents and subtenants, together with all or any of Tenant's Property, by suitable action at law, or by force. Tenant waives any right to the service of any notice of Landlord's intention to re-enter and Landlord shall not be liable in any way in connection with any action it takes pursuant to this Paragraph 12(c).

(d) In case of termination of Tenant's right of possession of the Premises without termination of this Lease, Tenant shall remain liable for Rent, any additional rent and all other charges provided for in this Lease for the then remaining term of this Lease as and when due hereunder, and any and all expenses which Landlord may have incurred in re-entering the Premises including, but not limited to, allocable overhead, alterations to the building, and leasing, construction, architectural, reasonable legal and accounting fees. Landlord shall have the obligation to use commercially reasonable efforts to relet the whole or part of the Premises upon terms which Landlord, in its reasonable discretion, deems appropriate, and Tenant shall be responsible for all expenses incurred by Landlord in reletting or attempting to relet and all rent collected from reletting shall be credited against all of Tenant's obligations hereunder.

(e) In the event of a Default, Landlord may, at its sole option, enter upon the Premises, if deemed necessary by Landlord in its sole discretion, and/or do whatever may be deemed necessary by Landlord in its sole discretion to cure such Default by Tenant. Tenant shall pay to Landlord, within five (5) days of Landlord's request, all costs incurred by Landlord in connection with Landlord's curing of such Default. In addition to the above costs, in the event Landlord does not receive payment from Tenant when due under this Paragraph 12(e), then interest at the rate of eighteen percent (18%) per annum or, if less, the highest rate allowable by law (the "Default Interest Rate"), shall be due and payable with respect to such payment from the due date thereof until Landlord receives such payment.

(f) In the event Landlord engages legal counsel in connection with the enforcement of any of the terms and provisions of this Lease, then, in addition to all other sums due from Tenant to Landlord under this Lease, Tenant shall pay to Landlord any and all reasonable attorneys' fees and legal costs and expenses incurred by Landlord, whether or not judicial proceedings are filed, and including on appeal and in any bankruptcy proceedings.

(g) Notwithstanding the foregoing, in the event Tenant fails (beyond any applicable cure periods set forth herein) to (1) maintain and keep in full force and effect any or all of the insurance policies required pursuant to Paragraph 4 hereof, or (2) pay when due any and all taxes and/or assessments levied or assessed against the Premises, or (3) Tenant fails to maintain or repair the Premises as required by Paragraph 5 hereof, then in the event Landlord does not terminate this Lease, and at Landlord's request and in Landlord's sole discretion, Tenant shall escrow funds for payment of such insurance premiums, taxes and assessments, utilities, maintenance and repair costs in the following manner:

(i) Tenant shall immediately pay to Landlord all sums expended by Landlord, plus an additional ten percent (10%) thereof, for purposes of: (1) bringing current or reinstating or purchasing the insurance required under Paragraph 4 hereof; and/or (2)

paying all such taxes and assessments which are past due or currently due. Thereafter, Tenant shall pay to Landlord on the first (1st) day of each month along with the monthly payment of Rent a sum (the "Escrow Funds") equal to one-twelfth (1/12th) of: (A) the yearly premium(s) for the insurance required to be maintained by Tenant pursuant to Paragraph 4 hereof; and/or (B) the annual taxes and assessments levied or assessed against the Premises as reasonably estimated by Landlord based on the prior year's taxes and assessments levied or assessed against the Premises.

       (ii)     Landlord shall apply the Escrow Funds to pay said insurance and/or taxes and assessments. No interest shall be payable by Landlord on the Escrow Funds unless required by applicable law, in which event all such interest shall be first applied by Landlord to pay such insurance premiums and/or taxes and assessments. Landlord shall provide to Tenant an annual accounting of the Escrow Funds in Landlord's normal format showing credits and debits to the Escrow Funds and the purpose for which each debit to the Escrow Funds was made.

       (iii)    If the amount of the Escrow Funds held by Landlord at the time of the annual accounting thereof shall exceed the amount deemed necessary by Landlord to provide for the payment of such insurance premiums and/or taxes and assessments as they become due, such excess shall be credited to Tenant against the next monthly installment or installments of Escrow Funds due. If at any time the amount of the Escrow Funds held by Landlord shall be less than the amount deemed necessary by Landlord to pay such insurance premiums and/or taxes and assessments as they become due, Tenant shall pay to Landlord any amount necessary to make up the deficiency within thirty (30) days after notice from Landlord to Tenant requesting payment thereof.

       (iv)    The foregoing Escrow Funds arrangement shall terminate if Tenant fully and faithfully complies with the provisions of this Paragraph 12(g) for a period of twenty-four (24) consecutive months. Upon the termination or expiration of this Lease, Landlord shall promptly refund (or credit to Tenant against amounts due to Landlord in the case of termination due to Tenant's Default) any Escrow Funds held by Landlord.

       (h)    The rights and remedies of Landlord set forth herein shall be in addition to any other right and remedy now or hereafter provided by law, and all such rights and remedies shall be cumulative. No action or inaction by Landlord shall constitute a waiver of any Default, and no waiver of any Default shall be effective unless it is in writing, signed by Landlord.

## 13.    HOLDING OVER

       In the event Tenant remains in possession of the Premises after the expiration of this Lease without executing a new written lease acceptable to Landlord and Tenant, Tenant shall occupy the Premises as a tenant-at-will (or tenant-at-sufferance, as the case may be) subject to all the terms hereof (except as modified by this Paragraph 13 and except for notice requirements inconsistent with a tenancy-at-will or tenancy-at-sufferance), but such possession shall not limit Landlord's rights and remedies by reason thereof nor constitute a holding over. In the event of such month to month tenancy, the monthly installment of Annual Rent due for each such month

shall increase to be 150% of the monthly installment thereof which was payable during the last month of the term of this Lease.

14. **WAIVER OF SUBROGATION**

Notwithstanding anything in this Lease to the contrary, other than Tenant's obligations to repair, restore or rebuild described in Paragraph 4 hereof, neither party shall be liable to the other for any damage or destruction of the Premises resulting from fire or other casualty covered by insurance required of either party hereunder, whether or not such loss, damage or destruction of the Premises is caused by or results from the negligence of such party (which term includes such party's officers, employees, agents and invitees), and each party hereby expressly releases the other from all liability for or on account of any said insured loss, damage or destruction, whether or not the party suffering the loss is insured against such loss, and if insured whether fully or partially. Each party shall procure all endorsements of insurance policies carried by it necessary to protect the other from any right of subrogation and/or liability in the event of such loss.

15. **ASSIGNMENT AND SUBLETTING**

(a)      Except as set forth in Paragraph 15(b) hereof, Tenant shall not have the right, without first obtaining Landlord's prior written consent, not to be unreasonably withheld, to assign this Lease or sublet any part or all of the Premises to any party for any purpose. Landlord agrees to provide its consent to an assignment or subletting, so long as: (i) such assignment or subletting would not violate the terms of any agreement of record applicable to the Premises in effect prior to the Effective Date, or, agreements recorded after the Effective Date, provided Tenant has consented in writing to the terms, if any, in such agreements recorded after the Effective Date which materially affect assignment rights granted in this Paragraph 15 or the permitted use of the Premises, (ii) such assignee or subtenant will operate a nationally, regionally or locally recognized restaurant on the Premises, (iii) the proposed use does not violate any applicable governmental codes or regulations, (iv) the proposed use is not noxious or offensive as defined in Paragraph 17 hereof, and (v) the assignee or subtenant has the financial capacity to meet the obligations imposed on it by this Lease (as reasonably determined by Landlord). No assignment or subletting or consent thereto by Landlord shall relieve Tenant of its liability for the continued performance of all terms, covenants and conditions of this Lease, including, without limitation, the payment of all Rent and other charges hereunder.

(b)      Notwithstanding the foregoing Paragraph 15(a) hereof, Tenant shall have the right to sublet the Premises, and to assign or otherwise transfer its interest in, to and under this Lease, without Landlord's approval, written or otherwise, to (i) an operating subsidiary of Tenant; or (ii) a Shoney's franchisee; or (iii) any surviving corporation resulting from a merger or consolidation of Tenant with any other corporation; or (iv) any entity which purchases or otherwise acquires all or substantially all of the assets of Tenant. Notwithstanding anything herein to the contrary, in the event of an assignment or sublet in accordance with Section 15(b)(ii) above, Original Tenant (or any successor Shoney's franchisor) shall be relieved of its liability for the continued performance of all terms, covenants and conditions of this Lease from and after the date of such assignment or subletting. If such franchisee shall thereafter Default under this Lease, Landlord shall provide written notice thereof to Original Tenant (or any successor Shoney's franchisor), and Original Tenant (or any successor Shoney's franchisor) shall have the same period granted to

such franchisee, if any, after notice, to cure or cause the curing of such Default. Furthermore, in the event of a Default, Original Tenant (or any successor Shoney's franchisor) shall have the right (a) to perform the obligations of Tenant hereunder, without being liable for any failure to perform such obligations, and (b) to cause a replacement franchisee of Original Tenant (or any successor Shoney's franchisor) to assume this Lease, and any such assumption shall not require any further act or instrument by Landlord. Provided that Original Tenant (or any successor Shoney's franchisor) is performing the obligations of Tenant hereunder, Landlord shall not have the right to exercise its remedies hereunder. The rights of Original Tenant (or any successor Shoney's franchisor) under this Section 15(b) may be exercised from time to time and shall not be extinguished by any exercise thereof.

(c)     Prior to any permitted assignment or subletting hereunder, Tenant shall deliver to Landlord written notice of such assignment or subletting, together with:  (i) a copy of the assignment or subletting documents (including copies of any documents related thereto to be recorded); (ii) the name, address and telephone number of such assignee or subtenant and a designated contact person therefor; (iii) a new insurance policy and binder complying with the terms of this Lease and naming such assignee or subtenant as Tenant of the Premises; and (iv) an agreement executed by such assignee or subtenant, in recordable form, whereby such assignee or subtenant assumes and agrees to discharge all obligations of Tenant under this Lease.

(d)     Landlord shall have the right, without limitation, to sell, convey, transfer or assign its interest in the Premises or its interest in this Lease, and upon such conveyance being completed all covenants and obligations of Landlord under this Lease accruing thereafter (but not before such conveyance) shall cease, but such covenants and obligations shall run with the land and shall be binding upon the subsequent landlord or owners of the Premises or of this Lease.

(e)     Tenant shall have the right to transfer, sell or lease all of Tenant's Property to any permitted assignee or sublessee under this Paragraph 15 and such assignee or subtenant may finance such Tenant's Property, in which case Landlord agrees to provide a Subordination of Landlord's Lien therefor as described in Paragraph 3(d).

16.   **SUBORDINATION, NON-DISTURBANCE, ATTORNMENT, ESTOPPEL CERTIFICATE.**

(a)     Upon written request of the holder of any mortgage (which term "mortgage" shall also include deeds of trust and deeds to secure debt) granted by Landlord now or hereafter relating to the Premises, Tenant shall subordinate its rights under this Lease to the lien thereof and to all advances made or hereafter to be made upon the security thereof, and Tenant shall execute, acknowledge and deliver an instrument substantially in the form of Exhibit "C" attached hereto (or in other reasonable form with similar provisions as contained in the form attached as Exhibit "C" hereto customarily used by such encumbrance holder to effect such subordination); provided, however, as a condition of all such subordinations, the holder of such mortgage shall be first required to agree with Tenant in such instrument evidencing such subordination that, notwithstanding the foreclosure or other exercise of rights under any such mortgage, Tenant's possession and occupancy of the Premises and its leasehold estate shall not be disturbed or

interfered with nor shall Tenant's rights and obligations under this Lease be altered or adversely affected thereby so long as Tenant is not in Default.

(b)     Notwithstanding anything in Paragraph 16(a) above to the contrary, in the event the holder of any such mortgage elects to have this Lease be superior to its mortgage, then upon notification to Tenant to that effect by such encumbrance holder, this Lease shall be deemed prior to the lien of said mortgage, whether this Lease is dated prior or subsequent to the date of said mortgage, and Tenant shall execute, acknowledge and deliver an instrument reasonably acceptable to Tenant and such encumbrance holder to effect such priority.

(c)     In the event proceedings are brought for the foreclosure of, or in the event of the exercise of the power of sale under, any mortgage made by Landlord encumbering the Premises, or in the event of delivery of a deed in lieu of foreclosure under such a mortgage, Tenant shall attorn to the purchaser upon any such foreclosure or sale and recognize such purchaser as "Landlord" under this Lease, provided, however, that (i) so long as Tenant is not then in Default hereunder, this Lease and the leasehold estate hereby created will not be extinguished or terminated and the rights hereunder of Tenant will not be disturbed, affected or impaired by the foreclosure of such mortgage, delivery of a deed in lieu of foreclosure of such mortgage, or the exercise of other rights and remedies that such mortgage provides; (ii) Tenant shall not be named or joined as a party defendant or otherwise in any proceeding for the foreclosure of such mortgage or to enforce any rights under such mortgage; (iii) all condemnation awards and payments and all proceeds of insurance paid or payable with respect to the Premises shall continue to be applied and used in the manner set forth in this Lease; and (iv) neither such mortgage nor any other security instrument executed in connection therewith shall be construed as subjecting any of Tenant's Property to the lien thereof.  Upon the request of such purchaser or Tenant, Tenant and such purchaser shall execute, acknowledge and deliver an instrument, in form and substance reasonably satisfactory to such purchaser and Tenant, evidencing such attornment and agreement of nondisturbance.

(d)     Each party agrees, within seven (7) days after written request by the other, to execute, acknowledge and deliver to and in favor of any proposed mortgagee, or purchaser, assignee or subtenant of the Premises, an estoppel certificate, substantially in the form of Exhibit "D" attached hereto, stating, among other things (i) whether this Lease is in full force and effect, (ii) whether this Lease has been modified or amended and, if so, identifying and describing any such modification or amendment, (iii) the date to which Rent and other charges have been paid, and (iv) whether the party furnishing such certificate knows of any default on the part of the other party under this Lease, or has any claim against such party and, if so, specifying the nature of such default or claim.

(e)     Upon written notice to Tenant by the holder of any mortgage granted by Landlord and encumbering the Premises, Tenant shall provide, in the manner set forth in Paragraph 18 hereof, concurrent notice to such encumbrance holder, including a copy of any notice that Tenant is required to provide to Landlord hereunder in the event of any casualty damage to the Premises or in the event of any default on the part of Landlord under this Lease, and shall agree to allow such encumbrance holder the same period granted to Landlord, if any, after notice, to cure or cause the curing of such default before exercising Tenant's rights under this Lease, or terminating or declaring a default under this Lease.

17.    **USE OF PREMISES**

The use of the Premises by Tenant shall be limited to the operation of a Shoney's Restaurant, or such other use as may be made pursuant to a permitted assignment of this Lease or subletting of the Premises, or such other use as Landlord, in its sole discretion, otherwise may approve in writing and in advance. Landlord shall not be required to approve any use which Landlord deems to be "noxious or offensive", which shall be defined to mean an off-track betting business, massage parlor, blood bank, or adult or adult video rental store (which are defined as stores in which thirty percent (30%) or more of the inventory is not available for sale to children under eighteen (18) years old, other than R-rated movies); or a business, the primary or exclusive operation of which consists of a dance hall, bar serving alcoholic beverages, billiard or pool hall, bingo parlor, video game arcade or night club. Tenant shall at all times maintain the Premises to the extent required by Paragraph 5 hereof and operate its business in substantial compliance with all applicable regulations and requirements of all county, municipal, state, federal and other governmental authorities which are enacted during the term of this Lease (except to the extent that the Premises are "grand-fathered" under such regulations and requirements), and instruments of record affecting the Premises which are recorded prior to the Effective Date and thereafter, provided Tenant has consented in writing to any instrument recorded subsequent to the Effective Date, which consent shall not be unreasonably withheld.

18.    **NOTICES**

All notices and other communications required or permitted to be given hereunder shall be in writing and shall be delivered by a nationally recognized overnight courier or mailed by registered or certified mail, postage prepaid, return receipt requested, addressed as follows:

| | |
|---|---|
| If to Landlord: | Allen Ernest Hom, as trustee |
| | of the Allen Ernest Hom Trust, u/t/d |
| | August 19, 1992 |
| | 1721 Lido Lane |
| | Huntington Beach, California  92647 |
| | Fax:  (717) 8470-8641 |
| | |
| If to Tenant: | Shoney's, LLC |
| | 1717 Elm Hill Pike, Suite B-1 |
| | Nashville, Tennessee 37210 |
| | Attn: Real Estate |
| | Fax: (615) 231-2689 |

Any party may change its address for notices by written notice in like manner as provided in this Paragraph 18 and such change of address shall be effective seven (7) days after the date notice of such change of address is given. Notice for purposes of this Lease shall be deemed given when it shall have been deposited with a nationally recognized overnight courier or with the U.S. Postal Service for certified or registered mail delivery, with the party who is giving such notice having made sufficient payment or postage prepaid.

With respect to any such notice, Tenant and Landlord shall use their best efforts to simultaneously deliver a copy of such notice by facsimile at the facsimile number set forth above for the other party; provided however, certified mail or overnight courier delivery shall nevertheless be required to effect proper notice hereunder.

19. **INDEMNIFICATION**

Tenant does hereby indemnify and exonerate Landlord against and from all liabilities, losses, obligations, damages, penalties, claims, costs, charges and expenses, including reasonable architects' fees, reasonable attorneys' fees and legal costs and expenses incurred by Landlord, whether or not judicial proceedings are filed, and including on appeal and in any bankruptcy proceedings, which may be imposed upon or asserted against or incurred by Landlord by reason of any of the following occurring:

(a) any work or thing done by Tenant, or its agent, employee or contractor in respect of construction of, in, or to the Premises or any part of the improvements now or hereafter constructed on the Premises;

(b) any use, possession, occupation, operation, maintenance or management of the Premises or any part thereof by Tenant or its agent, employee or contractor;

(c) any failure by Tenant, or its agent, employee or contractor, to, or to properly use, possess, occupy, operate, maintain or manage the Premises or any part thereof;

(d) the condition, including environmental conditions (which either existed when, if ever, Tenant or its affiliates owned the Premises previous to this Lease or are caused by Tenant, its affiliates or their respective agents, employees or contractors during the Lease term) of the Land and the improvements thereon (and the Appurtenant Interests to the extent that Tenant is a responsible party therefor) or any part thereof;

(e) any negligence on the part of Tenant or any of its agents, contractors, servants, employees, licensees or invitees;

(f) any accident, injury or damage to any person or property occurring in, on, or about the Premises or any part thereof including any sidewalk adjacent thereto; or

(g) any failure on the part of Tenant to perform or comply with any of the covenants, agreements, terms or conditions contained in this Lease on its part to be performed or complied with; provided, however, notwithstanding any term of this Lease to the contrary, nothing in this Paragraph 19 or elsewhere in this Lease shall obligate or require Tenant to indemnify, defend or hold Landlord harmless from and against any losses, liabilities, damages, costs, expenses, suits, judgments or claims arising from injury or damage during the term of this Lease or any extension or renewal thereof to person or property caused by the willful misconduct or gross negligence of Landlord or any of its agents, employees or contractors.

(h) Landlord shall not be liable to Tenant, Tenant's employees, agents, invitees, licensees or any other person whomsoever for any injury to person or damage to property on or

about the Premises caused by the negligence or misconduct of Tenant or its agents, servants or employees or of any other person entering the building on the Land under expressed or implied invitation by Tenant.

20.   COOPERATION

(a)   Landlord shall reasonably cooperate with Tenant throughout the term of this Lease and any extension or renewal thereof to secure or maintain proper zoning, building and other permits and compliance with all applicable laws. Landlord shall execute any petitions, requests, applications and the like as Tenant shall reasonably request in order to obtain any permits, licenses, variances and approvals which, in the reasonable judgment of Tenant, are necessary for the lawful construction and/or operation of Tenant's business on the Premises; provided, however, Tenant shall indemnify and hold Landlord harmless from any and all expenses, costs, charges, liabilities, losses, obligations, damages and claims of any type which may be imposed upon, asserted against or incurred by Landlord by reason of the same.

(b)   Landlord shall have the right, in Landlord's sole discretion, to enter into an exchange agreement with a qualified intermediary in order to effectuate a like-kind exchange of the Premises for one or more other properties. Landlord and Tenant agree that Tenant, at no cost or liability to Tenant, shall cooperate with Landlord in effecting a like-kind exchange of the Premises by Landlord pursuant to and in accordance with the provisions of Section 1031 of the Code and the Treasury Regulations promulgated thereunder.

21.   LANDLORD'S LIABILITIES

Neither Landlord nor any partner, member, shareholder or beneficial owner thereof shall have any personal liability with respect to any of the provisions of this Lease, and if Landlord is in default with respect to its obligations hereunder, Tenant shall look solely to the equity of Landlord in the Premises to recover any judgment against Landlord.

22.   SUCCESSORS

The covenants, conditions and agreements contained in this Lease shall bind and inure to the benefit of Landlord and Tenant and their respective heirs, legal representatives, successors and permitted assigns.

23.   ENTIRE AGREEMENT/MEMORANDUM OF LEASE

This Lease contains the entire agreement between the parties hereto and may not be modified in any manner other than in writing signed by the parties hereto or their successors in interest.   A memorandum of this Lease in the form attached hereto as Exhibit "E" may be executed by the parties and recorded in the official records of the county where the Premises are located, the cost of which shall be born by the party requesting recording.   At the request of Landlord, Tenant shall be obligated, upon the expiration or earlier termination of this Lease, to execute and deliver to Landlord a recordable release of any such memorandum of Lease, which obligation shall survive the expiration or earlier termination of this Lease.

24.    **GENDER**

Whenever the context hereof permits or requires, words in the singular may be regarded as in the plural and vice-versa, and personal pronouns may be read as masculine, feminine and neuter, as the context reasonably requires.

25.    **BROKERAGE FEES**

It is understood and agreed that neither party has incurred any real estate brokerage fees or commissions arising out of this Lease and each party agrees to hold the other harmless from and against all such fees and commissions incurred, and costs related thereto including legal fees, as a result of its own conduct or alleged conduct.

26.    **CAPTIONS**

The captions of this Lease are for convenience only, and do not in any way define, limit, disclose, or amplify terms or provisions of this Lease or the scope or intent thereof.

27.    **NOT A SECURITY ARRANGEMENT**

The parties hereto agree and acknowledge that this transaction is not intended as a security arrangement or financing secured by real property, but shall be construed for all purposes as a true lease.

28.    **NET LEASE**

It is the intention of the parties hereto that this Lease is and shall be treated as a triple net lease. Any present or future law to the contrary notwithstanding, this Lease shall not terminate (except as expressly provided in Paragraph 4(a) hereof) nor shall Tenant be entitled to any abatement, suspension, deferment, reduction (except as expressly provided in Paragraph 6(b) hereof), setoff, counterclaim, or defense with respect to Rent, nor shall the obligations of Tenant hereunder be affected by reason of: any damage to or destruction of the Premises or any part thereof; any Taking of the Premises or any part thereof or interest therein by condemnation or otherwise (except as expressly provided in Paragraph 6 hereof); any prohibition, limitation, restriction or prevention of Tenant's use, occupancy or enjoyment of the Premises or any part thereof, or any interference with such use, occupancy or enjoyment by any person or for any other reason unless arising or resulting from the grossly negligent acts or willful misconduct of Landlord or its agents, employees, or contractors; any title defect or encumbrance or any matter affecting title to the Premises or any part thereof unless arising or resulting from Landlord's recordation of an encumbrance against the Premises in violation of the provisions of Paragraph 15(a)(i) hereof; any default by Landlord hereunder; any proceeding relating to Landlord; any action of governmental authority; any breach of warranty or misrepresentation; any defect in the condition, quality or fitness for use of the Premises or any part thereof; or any other cause whether similar or dissimilar to the foregoing and whether or not Tenant shall have notice or knowledge of any of the foregoing. The parties intend that the obligations of Tenant hereunder shall be separate and independent covenants and agreements and shall continue unaffected unless

such obligations shall have been modified or terminated in accordance with an express provision of this Lease.

## 29.   WAIVER

No waiver by Landlord of any provision hereof shall be deemed a wavier of any other provision hereof or of any subsequent breach by Tenant of the same or any other provision. Landlord's consent to, or approval of, any act as required hereunder shall not be deemed to render unnecessary the obtaining of Landlord's consent to or approval of any such subsequent act by Tenant.  The acceptance of Rent hereunder by Landlord shall not be a waiver of any preceding Default by Tenant of any provision hereof, other than the failure of Tenant to pay the particular Rent so accepted, regardless of Landlord's knowledge of such preceding breach at the time of acceptance of such Rent.

## 30.   TIME OF THE ESSENCE

Landlord and Tenant agree that time shall be of the essence of all terms and provisions of this Lease.

## 31.   SEVERABILITY

If any provision of this Lease becomes unenforceable for any reason, such unenforceability shall not limit or impair the operation or validity of any other provision of this Lease.

## 32.   JURISDICTION, VENUE, AND GOVERNING LAW

If any party to this Lease institutes any lawsuit or other action or proceeding against the other party and pertaining to this Lease, any right or obligation of any party hereunder, breach of this Lease or otherwise pertaining to the Premises, the sole and exclusive venue and jurisdiction for filing and maintaining any such lawsuit or other action or proceeding shall be in the jurisdiction where the Land is located, and the parties to this Lease waive the right to institute or maintain any such suit, action or proceeding in any other courts or forums whatsoever.  Each party by executing this Lease consents and submits itself to the personal jurisdiction of such court.  This Lease shall be construed and governed in accordance with the laws of the state where the Land is located without regard to conflict of law principles.

## 33.   ATTORNEY'S FEES

In the event of any judicial or other adversarial proceeding between the parties concerning this Lease, to the extent permitted by applicable law, the prevailing party shall be entitled to recover all of its reasonable attorneys' fees and other costs in addition to any other relief to which it may be entitled.

34.  <u>EASEMENTS</u>

During the term of this Lease and any extension or renewal thereof, Landlord agrees to grant such utility easements on, over and above the Premises as Tenant may reasonably request and as are reasonably necessary for operation of the Premises in accordance with the Permitted Use.

[SIGNATURES ON NEXT PAGE]

IN WITNESS WHEREOF, the parties hereto have executed this Lease to be effective as of the Effective Date.

"LANDLORD"

Signed, Sealed and Delivered
in the presence of:

_Allen Ernest Hom, Trustee_

**ALLEN ERNEST HOM,** as trustee of
the Allen Ernest Hom Trust, u/t/d
August 19, 1992,

Name: _TU LAN, TANG_

Name: _ANH NGOC NGUYEN_

STATE OF _California_ §
§
COUNTY OF _Orange_ §

Before me, _Yen Thi Vu_, Notary Public, on this day personally appeared ALLEN ERNEST HOM, as trustee of the Allen Ernest Hom Trust, u/t/d August 19, 1992, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this _24th_ day of January, 2006.

YEN THI VU
Commission # 1370965
Notary Public - California
Orange County
My Comm. Expires Aug 19, 2006

Notary Public in and for the State of _CA_

My Commission Expires: _Aug 19, 2006_
Printed Name: _YEN THI VU_

"TENANT"

Signed, Sealed and Delivered
in the presence of:

SHONEY'S, LLC,
a Tennessee limited liability company

Name: _Catherine L Neal_

By: _Ted R Habermann_
Name: _Ted R Habermann_
Title: _Vice-President_

Name: _Judy West_

STATE OF _Tennessee_ §
§
COUNTY OF _Davidson_ §

Before me, _Susan Dierolf-Harris_ Notary Public, on this day personally appeared
_Ted R. Habermann_, the _vice president_ of SHONEY'S, LLC, a Tennessee
limited liability company, known to me to be the person whose name is subscribed to the
foregoing instrument and acknowledged to me that he executed the same for the purposes and
consideration therein expressed.

Given under my hand and seal of office this _3_ day of January, 2006.



My Commission Expires NOV. 24, 2007

_Susan Dierolf-Harris_
Notary Public in and for the State of _Tennessee_

My Commission Expires: _Nov. 24, 2007_
Printed Name: _Susan Dierolf-Harris_

EXHIBITS ATTACHED

Exhibit "A" - Land
Exhibit "B" – Intentionally Deleted
Exhibit "C" - Subordination, Non-Disturbance and Attornment Agreement
Exhibit "D" - Estoppel Certificate
Exhibit "E" – Memorandum of Lease
Rent Addendum

EXHIBIT "A"

Description of the Land

Unit # 2355

Commencing at the Northeast corner of Section 24, Township 18 North, Range 8 West, Washington County, Mississippi; thence South 01 degrees 30 minutes 45 seconds East 6.65 feet; thence South 88 degrees 29 minutes 15 seconds West 2647.06 feet parallel to and 50 feet South of the centerline of U.S. Highway 82 to the Northeast corner of Sarullo Third Addition to the City of Greenville, Washington County, Mississippi; thence South 00 degrees 44 minutes 45 seconds East 10.00 feet to the South right-of-way of said highway; thence North 88 degrees 29 minutes 15 seconds East 600.00 feet to the Point of Beginning of the tract herein described; thence continue North 88 degrees 29 minutes 15 second East 195.00 feet; thence South 01 degrees 30 minutes 45 second East 258.00 feet; thence South 88 degrees 29 minutes 15 seconds West 195.00 feet; thence North 01 degrees 30 minutes 45 seconds West 258.00 feet to the Point of Beginning, containing 1.155 acres, more or less, and being located in the Northwest Quarter of Section 24, Township 18 North, Range 8 West, Washington County, Mississippi, according to a Plat of Survey of said property dated February 22, 1985, by G.E. Alexander, Jr., P.E., as recorded in Deed of Trust Book 1556 at page 235 of the Washington County Land Records.

EXHIBIT "C"

## SUBORDINATION, NON-DISTURBANCE
## AND ATTORNMENT AGREEMENT

THIS SUBORDINATION NON-DISTURBANCE AND ATTORNMENT AGREEMENT (hereinafter referred to as the "Agreement"), made and entered into as of the _____ day of _____, 200__, by and among _____, a _____, whose address is _____ (hereinafter referred to as the "Lender"), _____, a _____, whose address is _____ (hereinafter referred to as the "Tenant"), and _____, a _____, whose address is _____ (hereinafter referred to as the "Landlord");

### W I T N E S S E T H:

WHEREAS, Lender is the holder of a mortgage loan (hereinafter referred to as the "Loan") to Landlord, which Loan is secured by, inter alia, a [[ Commercial Mortgage/Deed of Trust ]] and Security Agreement executed by Landlord in favor of Lender (hereinafter referred to as the "Mortgage"), encumbering Landlord's property located at _____, in _____ County, _____ (hereinafter referred to as the "Mortgaged Premises"); and

WHEREAS, Landlord has leased all or some portion of the Mortgaged Premises (hereinafter referred to as the "Premises") to Tenant by Lease Agreement dated as of _____, 20___, as amended by _____ dated _____, 20____ (hereinafter collectively referred to as the "Lease"); and

WHEREAS, Lender, in connection with the Loan, requires that the Lease and all of the rights of Tenant thereunder be subordinated to the Mortgage and all of the rights of Lender thereunder, subject to the terms of this Agreement; and

WHEREAS, Tenant desires to receive certain assurances that its possession of the Premises will not be disturbed in the event of default and/or foreclosure under the Mortgage, and Lender is willing to grant certain assurances upon the terms and conditions hereinafter set forth;

NOW, THEREFORE, the parties hereto, in consideration of the mutual covenants herein contained and intending to be legally bound, hereby agree as follows:

1.  Subject to the terms of this Agreement, the Lease and all of the rights of Tenant thereunder shall be and are hereby declared to be and at all times hereafter shall be and remain

2

subject and subordinate in all respects to the Mortgage and all of the rights of Lender thereunder. Notwithstanding such subordination, Lender hereby agrees that, so long as no Default by Tenant then exists under the Lease: (a) the Lease and the leasehold estate thereby created will not be extinguished or terminated and the rights thereunder of Tenant will not be disturbed, affected, or impaired by the foreclosure of such Mortgage, delivery of a deed in lieu of foreclosure of such Mortgage, or the exercise of other rights and remedies that the Mortgage provides; (b) Tenant shall not be named or joined as a party defendant or otherwise in any proceeding for the foreclosure of such Mortgage or to enforce any rights under the Mortgage; (c) all condemnation awards and payments and all proceeds of insurance paid or payable with respect to the Premises shall be applied and used in the manner set forth in the Lease; and (d) neither the Mortgage nor any other security instrument executed in connection therewith shall be construed as subjecting in any manner to the lien thereof any trade fixtures, business equipment, signs or other personal property at any time supplied or installed by Tenant in or on the Premises, regardless of the manner or mode of attachment thereof to the Premises. In the event that Lender succeeds to the interest of Landlord under the Lease and/or title to the Premises, Tenant agrees to attorn to and to recognize Lender (as mortgagee in possession or otherwise), or the purchaser at any foreclosure sale, as Tenant's landlord for the balance of the term of the Lease, in accordance with the terms and provisions thereof, but subject, nevertheless, to the provisions of this Agreement. Accordingly, from and after such event, Lender and Tenant shall have the same remedies against one another for the breach of an agreement contained in the Lease as Tenant and Landlord had before Lender (or such other purchaser) succeeded to the interest of Landlord thereunder.

2.       Lender hereby agrees with Tenant that, so long as Tenant and/or its permitted successors and assigns comply with all of the terms, provisions, agreements, covenants and obligations set forth in the Lease, Tenant's possession of the Premises under the Lease shall not be disturbed or interfered with by Lender.

3.       Tenant hereby agrees that Lender, or any purchaser at a foreclosure sale, shall not be (a) liable for any act or omission of Landlord under the Lease, (b) subject to any offsets or defenses which Tenant may have at any time hereafter against Landlord, (c) bound by any rent which Tenant may have paid to Landlord for more than the current month, and (d) bound by any amendment or modification of the Lease made without Lender's prior written consent.

4.       Tenant hereby agrees that, concurrently with Tenant's sending to Landlord any written notice of default by Landlord required under the terms of the Lease, it shall send a copy of such notice to Lender at the address set forth above, by certified mail, return receipt requested. Tenant further agrees that with respect to any default of Landlord which would entitle Tenant to cancel the Lease or offset or abate the rent payable thereunder, any provision of the Lease to the contrary notwithstanding, no such cancellation or offset or abatement of rent shall be effective unless Lender shall have received notice in the form and manner required by the provisions of this Paragraph and shall have failed, within the cure period during which Landlord may cure such default, if any, as set forth in the Lease, to cure such default or cause such default to be cured.

3

5.     Lender acknowledges that this Agreement has been requested by [Landlord] [Tenant in connection with a loan by Tenant's lender to Tenant which is secured, inter alia, by a leasehold mortgage or similar interest on Tenant's interest in the Premises and as Tenant under the Lease, and that Tenant's lender is an intended third party beneficiary of this Agreement.]

6.     This Agreement may not be modified orally or in any manner other than by an agreement in writing signed by the parties hereto, or their respective successors in interest.  This Agreement shall inure to the benefit of and be binding upon the parties hereto, and their successors and assigns.

7.     This Agreement shall be construed in accordance with the laws of the State where the Premises are located.

8.     This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute but one Agreement.

**[Signatures on Next Page]**

DALLAS4 742641v2 56043-00001

The parties hereto have caused this Agreement to be duly executed as of the day and year first above written.

**LENDER:**

_____
_____

By:_____
Name:_____
Title:_____

**TENANT:**

_____
_____

By:_____
Name:_____
Title:_____

**LANDLORD:**

_____
_____

By:_____
Name:_____
Title:_____

(INSERT APPROPRIATE NOTARY BLOCK FOR EACH PARTY)

5

## EXHIBIT "D"
## ESTOPPEL CERTIFICATE

The undersigned with respect to the premises at _____ as more particularly described in Exhibit "A" attached hereto and made a part hereof by this reference (the "Premises"), certifies and affirms the following to _____ [[("Tenant")]] [[("Assignee")]] [[("Subtenant")]] [[("Landlord")]] and to _____ [[("Mortgagee")]] [[("Purchaser")]]:

1.    Tenant leases the Premises from Landlord under that certain Lease Agreement dated _____, attached hereto as Exhibit "A" and made a part hereof by this reference (the "Lease").

2.    Rent under the Lease has been paid through _____, 20__. No rent has been paid more than thirty (30) days in advance, except as described in the preceding sentence. The monthly base rental amount is $_____.

3.    The term of the Lease is _____ through _____, a period of _____ years. Tenant has _____ options to extend the Lease for _____ years each, for a total term including all options through _____ as set forth in the Lease.

4.    Landlord holds $_____ as a security deposit pursuant to the Lease and any amendments thereof.

5.    Tenant, to the best of the undersigned's knowledge and belief without any independent investigation, is not in default under any terms of the Lease.

6.    Landlord, to the best of the undersigned's knowledge and belief without any independent investigation, is not in default under any terms of the Lease.

7.    The Lease is in full force and effect and there have been no modifications or amendments except those which are included in the Lease attached as Exhibit "A".

This Certificate may be relied upon by [[Purchaser]] [[Mortgagee]], who intends to [[purchase the Premises [and the Lease from Landlord], and by any mortgage lender of Purchaser]] [[provide secured [loan] [lease] financing to [Landlord] [Tenant]] [[Assignee, which intends to assume and accept an assignment of the Lease from Tenant]] [[Subtenant, which intends to sublease the Premises from Tenant]].

Dated this _____ day of _____, 200____
[[Landlord]] [[Tenant]]: _____
By: _____
Title: _____

DALLAS4 742641v2 56043-00001

EXHIBIT "A"

[[Lease and any amendments]]

EXHIBIT "E"

Form of Memorandum of Lease

THIS INSTRUMENT WAS PREPARED BY AND
AFTER RECORDATION RETURN TO:

<u>RETURN BY: MAIL (X) PICK UP ( )</u>
Shoney's Unit #2355

## MEMORANDUM OF LEASE

**THIS MEMORANDUM OF LEASE** (the "Memorandum") is made and entered into as
of the ____ day of January, 2006, by and between Shoney's, LLC, a Tennessee limited liability
company (the "Tenant"), and _____, a _____
(the "Landlord").

## W I T N E S S E T H:

**WHEREAS,** pursuant to the Lease Agreement, dated as of January ____, 2006, (such
Lease Agreement, as it may be hereafter amended, modified or supplemented, is herein referred
to as the "Lease"), by and between Landlord and Tenant, Landlord has leased to Tenant, and
Tenant has rented and leased from Landlord, the property described therein, including, without
limitation, the following (the "Premises"):   the real property or properties described more
particularly in the legal description or descriptions attached hereto as **Exhibit A** and incorporated
herein by this reference (the "Property"), together with (i) all rights, privileges, easements,
servitudes, rights-of-way and appurtenances belonging or appurtenant to the Property   (the
"Appurtenant Interests"), and (ii) all buildings, fixtures and other improvements now or hereafter
located on the Property and all right, title and interest of Landlord in and to any improvements
used in connection with or necessary for the exercise of the Appurtenant Interests; and

**WHEREAS,** Landlord and Tenant wish to publish notice of the Lease with respect to the
Premises;

**NOW, THEREFORE,** the parties hereto agree as follows:

1.     In consideration of the rent and other sums to be paid by Tenant and of the other
terms, covenants and conditions on Tenant's part to be kept and performed pursuant to the Lease,
Landlord leases to Tenant, and Tenant takes and leases from Landlord, the Premises.  The term
of the Lease with respect to the Premises commenced on January ____, 2006, and expires on
January ____, 2026, unless extended or otherwise terminated as provided in the Lease.

DALLAS4 742641v2 56043-00001

2.    The Lease grants Tenant two (2) additional options to extend the term of the Lease for consecutive periods of ten (10) years each, each of which is deemed to be automatically exercised by Tenant unless Tenant provides written notice to Landlord not less than six (6) months prior to the then existing expiration date of the term of the Lease of Tenant's election not to extend the term of the Lease for the next succeeding ten (10) year extension term.

3.    The respective addresses of the parties hereto are:

Tenant:             Shoney's, LLC
                      1717 Elm Hill Pike, Suite B-1
                      Nashville, Tennessee 37210
                      Attn: Real Estate

Landlord:           Allen Ernest Hom, as trustee
                      of the Allen Ernest Hom Trust, u/t/d
                      August 19, 1992
                      1721 Lido Lane
                      Huntington Beach, California  92647

4.    The terms and provisions of the Lease and this Memorandum shall run with the land for as long as the Lease remains in effect and shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns.

5.    This Memorandum is intended for recording purposes only, and does not modify, supersede, diminish, add to or change any of the terms and conditions of the Lease in any respect. The terms and conditions of the Lease shall control notwithstanding that the terms and conditions of the Lease may be inconsistent or vary from those set forth in this Memorandum.

6.    This Memorandum may be executed in multiple counterparts or copies, each of which shall be deemed an original hereof for all purposes. One or more counterparts or copies of this Memorandum may be executed by one of the parties hereto, and some different counterparts or copies executed by the other party hereto. Each counterpart or copy hereof executed by a party hereto shall be binding upon the party executing the same even though the other party may execute one or more different counterparts or copies and all counterparts or copies hereof so executed shall constitute but one and the same instrument. Each party hereto (a "Signing Party"), by execution of a counterpart or copy hereof, expressly authorizes and directs the other party hereto to detach the signature pages and/or acknowledgment, attestation, witness, jurat or similar pages thereto from the counterpart or copy hereof executed by such Signing Party and affix the same to another identical counterpart or copy hereof such that upon execution of multiple counterparts or copies hereof by all parties hereto, there shall be one counterpart or copy hereof to which are attached signature pages containing signatures of all parties hereto, together with any such acknowledgment, attestation, witness, jurat or similar pages relating thereto.

2

**SIGNATURE PAGE FOLLOWS**

DALLAS4 742641v2 56043-00001

**IN WITNESS WHEREOF,** the parties have caused this Memorandum to be executed by their duly authorized representatives as of the day and date first above written.

"LANDLORD"

Signed, Sealed and Delivered
in the presence of:

_____

a _____

By:_____

Name:_____

Name:_____

Title:_____

(CORPORATE SEAL)

Name:_____

STATE OF _____          §
                                          §
COUNTY OF _____          §

Before me, _____, Notary Public, on this day personally appeared _____, _____ of _____ _____, a _____, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this _____ day of January, 2006.

_____

Notary Public in and for the State of \_\_\_\_\_

My Commission Expires: _____

Printed Name: _____

DALLAS4 742641v2 56043-00001

"TENANT"

Signed, Sealed and Delivered          SHONEY'S, LLC,
in the presence of:                   a Tennessee limited liability company

                                      By: _____
_____          Name: _____
Name:_____          Title: _____


_____
Name:_____


STATE OF _____          §
                                 §
COUNTY OF _____           §


Before me, _____, Notary Public, on this day personally appeared
_____, _____ of Shoney's, LLC, a Tennessee
limited liability company, known to me to be the person whose name is subscribed to the
foregoing instrument and acknowledged to me that he executed the same for the purposes and
consideration therein expressed.

Given under my hand and seal of office this ____ day of January, 2006.


                              _____
                              Notary Public in and for the State of _____

                              My Commission Expires: _____
                              Printed Name: _____

Shoney's Unit #2355

**RENT ADDENDUM**
to
**LEASE AGREEMENT**

THIS RENT ADDENDUM TO LEASE AGREEMENT (the "Rent Addendum") dated as of January ___, 2006, by and between **ALLEN ERNEST HOM**, as trustee of the Allen Ernest Hom Trust, u/t/d August 19, 1992, as "Landlord", and **SHONEY'S, LLC**, a Tennessee limited liability company, as "Tenant", for Shoney's Unit #2355, is attached to and made a part of that certain Lease Agreement by and between Landlord and Tenant of even date herewith (the "Lease"). Notwithstanding any other provision to the contrary which may be contained in said Lease, it is specifically agreed by and between Landlord and Tenant as follows:

     1.    **Definitions.** Capitalized terms used in this Rent Addendum shall, unless otherwise defined, have the meanings ascribed to them in the Lease.

     2.    **Commencement of Rent.** On the date hereof, Landlord and Tenant have entered into the Lease pursuant to which Tenant leases from Landlord, and Landlord leases to Tenant, the Premises. Payment of Annual Rent shall commence as of the Annual Rent Commencement Date, as set forth in the Lease.

     3.    **Annual Rent.**

        (a)    Beginning on the Annual Rent Commencement Date, Tenant covenants and agrees to pay to Landlord annual rent ("Annual Rent"), by monthly installments on the first day of each month during the Term, each in the following amounts:

| Lease Years | Annual Rent | Monthly Rent |
|---|---|---|
| 1-5 | $99,899.00 | $8,324.92 |
| 6-10 | $109,888.90 | $9,157.41 |
| 11-15 | $120,877.79 | $10,073.15 |
| 16-20 | $132,965.56 | $11,080.46 |
| 21-25 | $146,262.11 | $12,188.51 |
| 26-30 | $160,888.32 | $13,407.36 |
| 31-35 | $176,977.15 | $14,748.10 |
| 36-40 | $194,674.86 | $16,222.91 |

        (b)    **Partial Months.** If the date on which Annual Rent shall be first due and payable shall fall on a day other than the first day of a calendar month, then the installment of Annual Rent for the partial rental month shall be prorated on a per diem basis for such partial month.

DALLAS4 742641v2 56043-00001

4.   **Late Charges.** In the event any installment of Rent is not received by Landlord within ten (10) days after Tenant's receipt of written notice from Landlord that such installment has not been received on or before its respective due date, there shall be an automatic late charge due to Landlord from Tenant in the amount of five percent (5%) of such delinquent installment of Rent. All such late charges due hereunder shall be deemed additional rent, and are not penalties but rather are charges attributable to administrative and collection costs arising out of such delinquency. In addition to such late charge, in the event Landlord does not receive Rent when due hereunder, interest at the rate of the maximum rate allowable by law shall be due and payable with respect to such payment from the expiration of any applicable grace period until Landlord receives such Rent.

5.   **Payments of Rent.** At Landlord's written election, all Rent payments shall be made on the first day of each month during the Term by electronic funds transfer to Landlord to the account and in accordance with the commercially reasonable procedures designated by Landlord, or in such other manner as Landlord or its successors or assigns, respectively, may from time to time designate in writing.

6.   **No Abatement.** Unless otherwise stated in the Lease, no abatement, offset, diminution or reduction of (a) Rent, charges or other compensation, or (b) Tenant's other obligations under the Lease shall be allowed to Tenant or any person claiming under Tenant, under any circumstances or for any reason whatsoever.

7.   **Interest Charges.** Notwithstanding any provision of the Lease or this Rent Addendum to the contrary relating to the payment of interest, late fees or charges or similar costs, it is the intent of Landlord and Tenant that Landlord shall not be entitled to receive, collect, reserve or apply, as interest, any amount in excess of the maximum amount of interest permitted to be charged by applicable laws or regulations, as amended or enacted from time to time. In the event the Lease or this Rent Addendum requires a payment of interest that exceeds the maximum amount of interest permitted to be charged under applicable laws or regulations, such interest shall not be received, collected, charged or reserved until such time as that interest, together with all other interest then payable, falls within the maximum amount of interest permitted to be charged under applicable laws or regulations. In the event Landlord receives any such interest in excess of the maximum amount of interest permitted to be charged under applicable laws or regulations, Landlord shall refund to Tenant the amount of such excess and, in such event, Landlord shall not be subject to any penalties provided by any laws or regulations for contracting for, charging, reserving, collecting or receiving interest in excess of the maximum amount of interest permitted to be charged under applicable laws or regulations.

**Initialed for Identification:**

_____ *AEH* _____          _____

By Landlord                                      By Tenant

DALLAS4 742641v2 56043-00901

4.     **Late Charges.**  In the event any installment of Rent is not received by Landlord within ten (10) days after Tenant's receipt of written notice from Landlord that such installment has not been received on or before its respective due date, there shall be an automatic late charge due to Landlord from Tenant in the amount of five percent (5%) of such delinquent installment of Rent.  All such late charges due hereunder shall be deemed additional rent, and are not penalties but rather are charges attributable to administrative and collection costs arising out of such delinquency.  In addition to such late charge, in the event Landlord does not receive Rent when due hereunder, interest at the rate of the maximum rate allowable by law shall be due and payable with respect to such payment from the expiration of any applicable grace period until Landlord receives such Rent.

5.     **Payments of Rent.**  At Landlord's written election, all Rent payments shall be made on the first day of each month during the Term by electronic funds transfer to Landlord to the account and in accordance with the commercially reasonable procedures designated by Landlord, or in such other manner as Landlord or its successors or assigns, respectively, may from time to time designate in writing.

6.     **No Abatement.**  Unless otherwise stated in the Lease, no abatement, offset, diminution or reduction of (a) Rent, charges or other compensation, or (b) Tenant's other obligations under the Lease shall be allowed to Tenant or any person claiming under Tenant, under any circumstances or for any reason whatsoever.

7.     **Interest Charges.**  Notwithstanding any provision of the Lease or this Rent Addendum to the contrary relating to the payment of interest, late fees or charges or similar costs, it is the intent of Landlord and Tenant that Landlord shall not be entitled to receive, collect, reserve or apply, as interest, any amount in excess of the maximum amount of interest permitted to be charged by applicable laws or regulations, as amended or enacted from time to time.  In the event the Lease or this Rent Addendum requires a payment of interest that exceeds the maximum amount of interest permitted to be charged under applicable laws or regulations, such interest shall not be received, collected, charged or reserved until such time as that interest, together with all other interest then payable, falls within the maximum amount of interest permitted to be charged under applicable laws or regulations.  In the event Landlord receives any such interest in excess of the maximum amount of interest permitted to be charged under applicable laws or regulations, Landlord shall refund to Tenant the amount of such excess and, in such event, Landlord shall not be subject to any penalties provided by any laws or regulations for contracting for, charging, reserving, collecting or receiving interest in excess of the maximum amount of interest permitted to be charged under applicable laws or regulations.

**Initialed for Identification:**

_____        _TRM_____

By Landlord                                              By Tenant

Shoney's Unit #2355

**RENT ADDENDUM**
to
**LEASE AGREEMENT**

THIS RENT ADDENDUM TO LEASE AGREEMENT (the "Rent Addendum") dated as of January ___, 2006, by and between **ALLEN ERNEST HOM**, as trustee of the Allen Ernest Hom Trust, u/t/d August 19, 1992, as "Landford", and **SHONEY'S, LLC**, a Tennessee limited liability company, as "Tenant", for Shoney's Unit #2355, is attached to and made a part of that certain Lease Agreement by and between Landlord and Tenant of even date herewith (the "Lease"). Notwithstanding any other provision to the contrary which may be contained in said Lease, it is specifically agreed by and between Landlord and Tenant as follows:

    1.    **Definitions.**  Capitalized terms used in this Rent Addendum shall, unless otherwise defined, have the meanings ascribed to them in the Lease.

    2.    **Commencement of Rent.**  On the date hereof, Landlord and Tenant have entered into the Lease pursuant to which Tenant leases from Landlord, and Landlord leases to Tenant, the Premises. Payment of Annual Rent shall commence as of the Annual Rent Commencement Date, as set forth in the Lease.

    3.    **Annual Rent.**

        (a)    Beginning on the Annual Rent Commencement Date, Tenant covenants and agrees to pay to Landlord annual rent ("Annual Rent"), by monthly installments on the first day of each month during the Term, each in the following amounts:

| Lease Years | Annual Rent | Monthly Rent |
|---|---|---|
| 1-5 | $99,899.00 | $8,324.92 |
| 6-10 | $109,888.90 | $9,157.41 |
| 11-15 | $120,877.79 | $10,073.15 |
| 16-20 | $132,965.56 | $11,080.46 |
| 21-25 | $146,262.11 | $12,188.51 |
| 26-30 | $160,888.32 | $13,407.36 |
| 31-35 | $176,977.15 | $14,748.10 |
| 36-40 | $194,674.86 | $16,222.91 |

        (b)    Partial Months.  If the date on which Annual Rent shall be first due and payable shall fall on a day other than the first day of a calendar month, then the installment of Annual Rent for the partial rental month shall be prorated on a per diem basis for such partial month.

4.    **Late Charges.**  In the event any installment of Rent is not received by Landlord within ten (10) days after Tenant's receipt of written notice from Landlord that such installment has not been received on or before its respective due date, there shall be an automatic late charge due to Landlord from Tenant in the amount of five percent (5%) of such delinquent installment of Rent.  All such late charges due hereunder shall be deemed additional rent, and are not penalties but rather are charges attributable to administrative and collection costs arising out of such delinquency.  In addition to such late charge, in the event Landlord does not receive Rent when due hereunder, interest at the rate of the maximum rate allowable by law shall be due and payable with respect to such payment from the expiration of any applicable grace period until Landlord receives such Rent.

5.    **Payments of Rent.**  At Landlord's written election, all Rent payments shall be made on the first day of each month during the Term by electronic funds transfer to the account and in accordance with the commercially reasonable procedures designated by Landlord, or in such other manner as Landlord or its successors or assigns, respectively, may from time to time designate in writing.

6.    **No Abatement.**  Unless otherwise stated in the Lease, no abatement, offset, diminution or reduction of (a) Rent, charges or other compensation, or (b) Tenant's other obligations under the Lease shall be allowed to Tenant or any person claiming under Tenant, under any circumstances or for any reason whatsoever.

7.    **Interest Charges.**  Notwithstanding any provision of the Lease or this Rent Addendum to the contrary relating to the payment of interest, late fees or charges or similar costs, it is the intent of Landlord and Tenant that Landlord shall not be entitled to receive, collect, reserve or apply, as interest, any amount in excess of the maximum amount of interest permitted to be charged by applicable laws or regulations, as amended or enacted from time to time.  In the event the Lease or this Rent Addendum requires a payment of interest that exceeds the maximum amount of interest permitted to be charged under applicable laws or regulations, such interest shall not be received, collected, charged or reserved until such time as that interest, together with all other interest then payable, falls within the maximum amount of interest permitted to be charged under applicable laws or regulations.  In the event Landlord receives any such interest in excess of the maximum amount of interest permitted to be charged under applicable laws or regulations, Landlord shall refund to Tenant the amount of such excess and, in such event, Landlord shall not be subject to any penalties provided by any laws or regulations for contracting for, charging, reserving, collecting or receiving interest in excess of the maximum amount of interest permitted to be charged under applicable laws or regulations.

Initialed for Identification:

_____ *ASH*                    _____

By Landlord                                    By Tenant

4.     **Late Charges.** In the event any installment of Rent is not received by Landlord within ten (10) days after Tenant's receipt of written notice from Landlord that such installment has not been received on or before its respective due date, there shall be an automatic late charge due to Landlord from Tenant in the amount of five percent (5%) of such delinquent installment of Rent. All such late charges due hereunder shall be deemed additional rent, and are not penalties but rather are charges attributable to administrative and collection costs arising out of such delinquency. In addition to such late charge, in the event Landlord does not receive Rent when due hereunder, interest at the rate of the maximum rate allowable by law shall be due and payable with respect to such payment from the expiration of any applicable grace period until Landlord receives such Rent.

5.     **Payments of Rent.** At Landlord's written election, all Rent payments shall be made on the first day of each month during the Term by electronic funds transfer to Landlord to the account and in accordance with the commercially reasonable procedures designated by Landlord, or in such other manner as Landlord or its successors or assigns, respectively, may from time to time designate in writing.

6.     **No Abatement.** Unless otherwise stated in the Lease, no abatement, offset, diminution or reduction of (a) Rent, charges or other compensation, or (b) Tenant's other obligations under the Lease shall be allowed to Tenant or any person claiming under Tenant, under any circumstances or for any reason whatsoever.

7.     **Interest Charges.** Notwithstanding any provision of the Lease or this Rent Addendum to the contrary relating to the payment of interest, late fees or charges or similar costs, it is the intent of Landlord and Tenant that Landlord shall not be entitled to receive, collect, reserve or apply, as interest, any amount in excess of the maximum amount of interest permitted to be charged by applicable laws or regulations, as amended or enacted from time to time. In the event the Lease or this Rent Addendum requires a payment of interest that exceeds the maximum amount of interest permitted to be charged under applicable laws or regulations, such interest shall not be received, collected, charged or reserved until such time as that interest, together with all other interest then payable, falls within the maximum amount of interest permitted to be charged under applicable laws or regulations. In the event Landlord receives any such interest in excess of the maximum amount of interest permitted to be charged under applicable laws or regulations, Landlord shall refund to Tenant the amount of such excess and, in such event, Landlord shall not be subject to any penalties provided by any laws or regulations for contracting for, charging, reserving, collecting or receiving interest in excess of the maximum amount of interest permitted to be charged under applicable laws or regulations.

**Initialed for Identification:**

_____          _____
By Landlord                                By Tenant


DALLAS4 742641v2 56043-00001

## MEMORANDUM OF LEASE

**THIS MEMORANDUM OF LEASE** (the "Memorandum") is made and entered into as of the 28 day of January, 2006, by and between SHONEY'S, LLC, a Tennessee limited liability company (the "Tenant"), and ALLEN ERNEST HOM, as trustee of the Allen Ernest Hom Trust, u/t/d August 19, 1992 (the "Landlord").

## WITNESSETH:

**WHEREAS**, pursuant to the Lease Agreement, dated as of January 28, 2006, (such Lease Agreement, as it may be hereafter amended, modified or supplemented, is herein referred to as the "Lease"), by and between Landlord and Tenant, Landlord has leased to Tenant, and Tenant has rented and leased from Landlord, the property described therein, including, without limitation, the following (the "Premises"): the real property or properties described more particularly in the legal description or descriptions attached hereto as **Exhibit A** and incorporated herein by this reference (the "Property"), together with (i) all rights, privileges, easements, servitudes, rights-of-way and appurtenances belonging or appurtenant to the Property (the "Appurtenant Interests"), and (ii) all buildings, fixtures and other improvements now or hereafter located on the Property and all right, title and interest of Landlord in and to any improvements used in connection with or necessary for the exercise of the Appurtenant Interests; and

**WHEREAS**, Landlord and Tenant wish to publish notice of the Lease with respect to the Premises;

**NOW, THEREFORE**, the parties hereto agree as follows:

In consideration of the rent and other sums to be paid by Tenant and of the other terms, covenants and conditions on Tenant's part to be kept and performed pursuant to the Lease, Landlord leases to Tenant, and Tenant takes and leases from Landlord, the Premises. The term of the Lease with respect to the Premises commenced on January 28, 2006, and expires on January 31, 2026, unless extended or otherwise terminated as provided in the Lease.

The Lease grants Tenant two (2) additional options to extend the term of the Lease for consecutive periods of ten (10) years each, each of which is deemed to be automatically exercised by Tenant unless Tenant provides written notice to Landlord not less than six (6)

Store No. 2355

1

DALLAS4 754972v1 56043-00015

months prior to the then existing expiration date of the term of the Lease of Tenant's election not to extend the term of the Lease for the next succeeding ten (10) year extension term.

The respective addresses of the parties hereto are:

Tenant:        Shoney's, LLC
1717 Elm Hill Pike, Suite B-1
Nashville, Tennessee 37210
Attn: Real Estate

Landlord:      Allen Ernest Hom, as trustee
of the Allen Ernest Hom Trust, u/t/d
August 19, 1992
1721 Lido Lane
Huntington Beach, California 92647

The terms and provisions of the Lease and this Memorandum shall run with the land for as long as the Lease remains in effect and shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns.

This Memorandum is intended for recording purposes only, and does not modify, supersede, diminish, add to or change any of the terms and conditions of the Lease in any respect. The terms and conditions of the Lease shall control notwithstanding that the terms and conditions of the Lease may be inconsistent or vary from those set forth in this Memorandum.

This Memorandum may be executed in multiple counterparts or copies, each of which shall be deemed an original hereof for all purposes. One or more counterparts or copies of this Memorandum may be executed by one of the parties hereto, and some different counterparts or copies executed by the other party hereto. Each counterpart or copy hereof executed by a party hereto shall be binding upon the party executing the same even though the other party may execute one or more different counterparts or copies and all counterparts or copies hereof so executed shall constitute but one and the same instrument. Each party hereto (a "Signing Party"), by execution of a counterpart or copy hereof, expressly authorizes and directs the other party hereto to detach the signature pages and/or acknowledgment, attestation, witness, jurat or similar pages thereto from the counterpart or copy hereof executed by such Signing Party and affix the same to another identical counterpart or copy hereof such that upon execution of multiple counterparts or copies hereof by all parties hereto, there shall be one counterpart or copy hereof to which are attached signature pages containing signatures of all parties hereto, together with any such acknowledgment, attestation, witness, jurat or similar pages relating thereto.

[SIGNATURE PAGES FOLLOW]

Store No. 2355

2

The parties hereto have caused this Memorandum to be duly executed as of the day and year first above written.

TENANT:

SHONEY'S, LLC,
a Tennessee limited liability company

By: _Ted Habermann_ (signature)

Name: Ted Habermann
Title: Vice President

STATE OF TENNESSEE       §
                         §
COUNTY OF DAVIDSON       §

Personally appeared before me, the undersigned authority in and for the said county and state, on this __3__ day of January, 2006, within my jurisdiction, the within named Ted Habermann, who acknowledged to me that he is Vice President of SHONEY'S, LLC, a Tennessee limited liability company, and that for and on behalf of SHONEY'S, LLC, and as the act and deed of SHONEY'S, LLC, he executed the above and foregoing instrument, after first having been duly authorized by said limited liability company so to do.

_Susan Dwight-Haug_ Notary Public
(signature of Notary Public)

My Commission Expires: __Nov. 24, 2007__

[Notary Seal: SUSAN DIERKER HARRIS / NOTARY PUBLIC AT LARGE / DAVIDSON COUNTY TENN.]

My Commission Expires NOV. 24, 2007

[ADDITIONAL SIGNATURE PAGE FOLLOWS]

Store No. 2355

3

DALLAS4 754972v1 56043-00015

LANDLORD:

_Allen Ernest Hom, Trustee_
ALLEN ERNEST HOM, as trustee of the
Allen Ernest Hom Trust, u/t/d August 19,
1992

STATE OF _California_ §
§
COUNTY OF _Orange_ §

    Personally appeared before me, the undersigned authority in and for the said county and
state, on this _24th_ day of January, 2006, within my jurisdiction, the within named ALLEN
ERNEST HOM, as trustee of the Allen Ernest Hom Trust, u/t/d August 19, 1992 who
acknowledged to me that he is the trustee of the Allen Ernest Hom Trust, u/t/d August 19, 1992,
and that for and on behalf of such trust, and as the act and deed of such trust, he executed the
above and foregoing instrument, after first having been duly authorized by said trust so to do.

(Seal)

_Yen Thi Vu_ , Notary Public
(signature of Notary Public)

My Commission Expires: _Aug 19, 2006_

YEN THI VU
Commission # 1370965
Notary Public - California
Orange County
My Comm. Expires Aug 19, 2006

Store No. 2355

4

DALLAS4 754972v1 56043-00015

INDEXING INSTRUCTIONS:

The Property described in this instrument should be indexed as: Section 24, Township 18 North, Range 8 West, Greenville, Washington County, Mississippi.

THIS INSTRUMENT PREPARED BY AND TO BE RETURNED TO:

Ben Browder, Esq., Jenkens & Gilchrist, P.C.,
1445 Ross Avenue, Suite 3700, Dallas, Tex as 75202, (214) 855-4500

Store No. 2355

5

DALLAS4 754972v1 56043-00015

## EXHIBIT A

### Legal Description

Commencing at the Northeast corner of Section 24, Township 18 North, Range 8 West, Washington County, Mississippi; thence South 01 degrees 30 minutes 45 seconds East 6.65 feet; thence South 88 degrees 29 minutes 15 seconds West 2647.06 feet parallel to and 50 feet South of the centerline of U.S. Highway 82 to the Northeast corner of Sarullo Third Addition to the City of Greenville, Washington County, Mississippi; thence South 00 degrees 44 minutes 45 seconds East 10.00 feet to the South right-of-way of said highway; thence North 88 degrees 29 minutes 15 seconds East 600.00 feet to the Point of Beginning of the tract herein described; thence continue North 88 degrees 29 minutes 15 second East 195.00 feet; thence South 01 degrees 30 minutes 45 second East 258.00 feet; thence South 88 degrees 29 minutes 15 seconds West 195.00 feet; thence North 01 degrees 30 minutes 45 seconds West 258.00 feet to the Point of Beginning, containing 1.155 acres, more or less, and being located in the Northwest Quarter of Section 24, Township 18 North, Range 8 West, Washington County, Mississippi, according to a Plat of Survey of said property dated February 22, 1985, by G.E. Alexander, Jr., P.E., as recorded in Deed of Trust Book 1556 at page 235 of the Washington County Land Records.

Store No. 2355

DALLAS4 754972v1 56043-00015